UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

Conservation Law Foundation, Inc.

Plaintiff,

v.

Second Street Iron & Metal Co., Inc.

Defendant.

_____

) 
) 
) Case No.
) 
) **COMPLAINT FOR DECLARATORY AND**
) **INJUNCTIVE RELIEF AND CIVIL**
) **PENALTIES**
) 
) 
) (Federal Water Pollution Control Act,
) 33 U.S.C. §§ 1251 to 1387)
) 
) 

Conservation Law Foundation, Inc. ("CLF") by and through its counsel, hereby alleges:

**INTRODUCTION**

1.      This is a civil suit brought under the citizen suit enforcement provisions of the

Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq. (the "Clean Water Act,"

"the Act," or "CWA").  Plaintiff seeks declaratory judgment, injunctive relief, and other

relief the Court deems appropriate to correct the Defendant's violations of the CWA,

which include continuous and ongoing unauthorized discharges of polluted stormwater

runoff from its Everett, Massachusetts, and Chelsea, Massachusetts scrap metal recycling

facilities into waters of the United States and failure to comply with the EPA Multi-

Sector General Permit for Stormwater Discharges Associated With Industrial Activity

("MSGP" or "Multi-Sector General Permit").

2.      The Mystic River watershed is home to approximately half a million people.  The watershed is also home to aquatic life, plants, and animal species that rely on the river, its tributaries, and adjacent wetlands for their survival.

3.      The CWA requires that states establish minimum water quality criteria and standards to protect human health and aquatic life.  CWA §§ 303-304, 33 U.S.C. §§ 1313-1314.

4.      Under the Massachusetts Surface Water Quality Standards, the Mystic River is "designated as a habitat for fish, other aquatic life and wildlife, including for their reproduction, migration, growth and other critical functions, and for primary and secondary contact recreation," and "shall have consistently good aesthetic value." 314 Mass. Code Regs. 4.05:4(b).

5.      The Massachusetts Surface Water Quality Standards establish minimum standards for a variety of pollutants, including but not limited to dissolved oxygen, temperature, pathogens (bacteria), solids, oil and grease, color and turbidity, taste and odor, nutrients, aesthetics, radioactivity, and toxic pollutants. 314 Mass. Code Regs. 4.05.

6.      The Massachusetts Department of Environmental Protection ("MassDEP") has found that levels of numerous pollutants including metals, oil and grease, organic enrichment/oxygen depletion, inorganic pollutants, pathogens, taste, color, odor, and ammonia consistently exceed the allowable levels under state water quality standards for the portion of the river between the Amelia Earhart Dam and Boston Harbor.[1]

---

[1] MassDEP, Integrated List of Waters (1995), *available at* http://www.mass.gov/dep/water/resources/08list2.pdf (last accessed Sept. 30, 2010). A Total Maximum Daily Load (TMDL) has not been established for the Mystic River. See EPA, Listed Water Information, Mystic River (2006), *available at* http://oaspub.epa.gov/tmdl/enviro.control?p_list_id=MA71-03&p_cycle=2006 (last visited Sept. 30, 2010).

7.      Stormwater runoff is one of the major sources of contamination of the Mystic River and its tributaries.

8.      Stormwater discharges from Second Street Iron & Metal Co., Inc. ("Second Street Iron & Metal," the "Facilities" or the "Defendant") contribute to the failure of the Mystic River and its tributary, the Island End River, to meet minimum water quality standards.

9.      Second Street Iron & Metal engages in industrial activities such as material handling and storage, and vehicle traffic in and out of its Facilities.  As precipitation comes into contact with pollutants generated by these activities, it picks up pollutants and is conveyed to nearby storm sewer systems and into the Mystic River and Island End River.

## JURISDICTION AND VENUE

10.      This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (the "Clean Water Act" or the "CWA").  This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1) and 28 U.S.C. § 1331 (an action arising under the Constitution and laws of the United States).

11.      Plaintiff has complied with the statutory notice requirements under Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2.

12.      On July 14, 2010, Plaintiff provided notice to Second Street Iron & Metal for violations of the Clean Water Act at two of its locations:  285 Second Street, Everett, MA 02149 ("285 Second Street Facility") and 315 Third Street, Chelsea, MA 02150 ("315 Third Street Facility").

13.     On July 14, 2010, Plaintiff provided notice of its intention to file suit against Second Street Iron & Metal for violations of the Clean Water Act at the 285 Second Street Facility by sending via certified mail a 60-day notice letter ("Notice Letter") to Second Street Iron & Metal, and to the owners and/or operators of Second Street Iron & Metal: Steven Strogoff; Schnitzer Northeast/ Prolerized New England Company LLC; and Prolerized Transport Systems, Inc., regarding Second Street Iron & Metal's violations of the Clean Water Act.  33 U.S.C. § 1365(a)(1); 40 C.F.R. § 135.2(a)(1). A copy of the Notice Letter was also sent to the registered agent for Second Street Iron & Metal, Steven Strogoff, as required by 40 C.F.R. § 135.2(a)(1).

14.     The 285 Second Street Facility Notice Letter was also sent to the owner of the 285 Second Street property, Mattuchio Bros, Inc. through the corporation's owner, Edward Strogoff, and to its Director and Secretary, Holly M. Strogoff.  The Mattuchio Bros, Inc. Notice Letter was mailed via certified mail to Edward Strogoff, but returned undelivered to Plaintiff.  The Plaintiff re-issued the same Notice Letter to all recipients via certified mail on July 27, 2010.

15.     On July 14, 2010, Plaintiff also provided notice of its intention to file suit against Second Street Iron & Metal for violations of the Clean Water Act at the 315 Third Street Facility by sending via certified mail a Notice Letter to the owners and/or operators of the 315 Third Street Facility: Yale Strogoff and Steven Strogoff. 33 U.S.C. § 1365(a)(1); 40 C.F.R. § 135.2(a)(1). A copy of the Notice Letter was also sent to the registered agent for Second Street Iron & Metal, Steven Strogoff, as required by 40 C.F.R. § 135.2(a)(1).

16.     A copy of both Notice Letters was sent to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region I, and the

Commissioner of the Massachusetts Department of Environmental Protection ("MassDEP") pursuant to the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1).

17.     A true and correct copy of CLF's Notice Letters is attached as Exhibit A, B, and C, and is incorporated by reference.

18.     More than sixty days has passed since the Notice Letters were served on Defendant and the state and federal agencies.

19.     Neither the EPA nor the Commonwealth of Massachusetts has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. 33 U.S.C. § 1365(b)(1)(B).

20.     Venue is proper in the District Court of Massachusetts pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

21.     Plaintiff Conservation Law Foundation, Inc. ("CLF") is a not-for-profit corporation incorporated under the laws of the Commonwealth of Massachusetts and with a principal place of business at 62 Summer Street, Boston, MA, 02110.

22.     CLF's mission includes the conservation and protection of the many uses of the waters in and around the Mystic River watershed for, among other things, fishing, recreation, boating, scenic and aesthetic enjoyment, and scientific purposes.  To further these goals, CLF actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

23.     Members of CLF live on or near the Mystic River and its tributaries, and use and enjoy the watershed for recreational, aesthetic, and scientific purposes.

24.     Discharges of pollutants by Defendant adversely affect CLF's members' use and enjoyment of the Mystic River watershed.

25.     The interests of CLF's members have been, are being, and will continue to be adversely affected by the Owner's and Operator's failure to comply with the Clean Water Act and the MSGP.  The relief sought will redress the harms to Plaintiff by Defendant's activities.  Continuing commission of the acts and omissions alleged above have and will continue to irreparably harm Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

26.     Second Street Iron & Metal is a corporation organized under the laws of the State of Massachusetts.

27.     Defendant Second Street Iron & Metal operates two scrap metal recycling facilities. The 285 Second Street Facility is situated on a triangular lot between the railroad tracks and Second Street, and includes only one entry/exit point on Second Street. The second facility the 315 Third Street Facility, is situated on a triangular lot between Third Street/Locust Street, East Elm Street, and the railroad tracks, and includes one entry/exit point on Third Street.

28.     Steven Strogoff is the President of Second Street Iron & Metal.

29.     Steven Strogoff is the registered agent for Second Street Iron & Metal.

30.     Second Street Iron & Metal maintains, operates, and is responsible for numerous industrial activities at its Facilities.

## STATUTORY BACKGROUND

### The Clean Water Act

31.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any

pollutant into waters of the United States from a "point source," unless the discharge

complies with various enumerated sections of the CWA.  Among other things, Section

301(a) prohibits discharges not authorized by, or in violation of, the terms of a valid

National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to

Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

32.     "Point source" is defined broadly under § 502(14) of the CWA to include, "any

discernible, confined and discrete conveyance, including but not limited to any pipe,

ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock,

concentrated animal feeding operation, or vessel or other floating craft, from which

pollutants are or may be discharged." CWA § 502(14), 33 U.S.C. § 1362(14).

33.     Congress amended the Clean Water Act in 1987 to require that certain industrial

facilities obtain stormwater discharge permits. Water Quality Act of 1987, Pub. L. No.

100-4, § 405, 101 Stat 7 (1987); see 55 Fed. Reg. 47990, 47991-93 (Nov. 16, 1990).

34.     Section 402 of the CWA requires that NPDES permits be issued for stormwater

discharges associated with industrial activities.  CWA §§ 402(a)(1), 402(p)(2),

402(p)(3)(A), 402(p)(4), 402(p)(6); 33 U.S.C. §§ 1342(a)(1), 1342(p)(2), 1342(p)(3)(A),

1342(p)(4), 1342(p)(6).

35.     EPA regulations set forth at 40 C.F.R. § 122.26 required industrial dischargers to

submit applications for permit coverage no later than October 1, 1992.  In September

1995, EPA issued a NPDES Storm Water Multi-Sector General Permit for Industrial

Activities ("1995 MSGP"). EPA re-issued the Multi-Sector General Permit for Industrial

Activities on October 30, 2000 ("2000 MSGP"), 65 Fed. Reg. 64746.  EPA re-issued the

Multi-Sector General Permit for Industrial Activities on September 29, 1995 ("1995

MSGP"), 73 Fed. Reg. 56572.

36.     In establishing these regulations, EPA cited abundant data showing the harmful

effects of stormwater runoff on rivers, streams, and coastal areas across the nation. In

particular, EPA found that runoff from industrial facilities contained elevated pollution

levels. 55 Fed. Reg. 47990, 47991 (Nov. 16, 1990).

37.     EPA has not delegated authority to the Commonwealth of Massachusetts to

implement a NPDES permitting program under the Clean Water Act.  Therefore, EPA is

the NPDES permitting authority in Massachusetts.

38.     The MSGP is issued by EPA pursuant to Sections 402(a) and 402(p) of the CWA

and regulates stormwater discharges from industrial facilities.  33 U.S.C. §§ 1342(a),

1342(p). In order to discharge stormwater lawfully, industrial dischargers must obtain

coverage under the MSGP and comply with its terms.

39.     Industrial dischargers are required to file a complete and accurate Notice of Intent

("NOI") to be covered by the MSGP.

40.     Industrial dischargers must also develop and implement a Stormwater Pollution

Prevention Plan ("SWPPP") prior to filing an NOI.  The SWPPP must identify and

evaluate sources of pollutants associated with industrial discharges from the facility, and

identify and implement effective Best Management Practices ("BMPs") to control

pollutants in stormwater discharges in a manner that achieves the substantive

requirements of the permit.

41.    Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), provides for citizen

enforcement actions against any "person" who is alleged to be in violation of an "effluent

standard or limitation . . . or an order issued by the Administrator or a State with respect

to such a standard or limitation."

42.    Such enforcement action under CWA Section 505(a) includes an action seeking

remedies for unauthorized discharge under Section 301 of the CWA, 33 U.S.C § 1311, as

well as for violation of a permit condition under Section 402 of the CWA, 33 U.S.C. §

1342, and Section 505(f) of the CWA, 33 U.S.C. § 1365(f).

43.    Each separate violation of the Clean Water Act subjects the violator to a penalty

of up to $27,500 per day per violation for all violations occurring before or on March 15,

2004, $32,500 per day per violation for all violations occurring after March 15, 2004, and

$37,500 per day per violation for all violations occurring after January 12, 2009, pursuant

to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R.

§§ 19.1 – 19.4.

**FACTS**

44.    Second Street Iron & Metal has operated and continues to operate a scrap metal

recycling and processing facility at 285 Second Street, Everett, MA 02149 since at least

January 1, 1995.

45.    Second Street Iron & Metal has operated and continues to operate a scrap metal

recycling and processing facility at 315 Third Street, Chelsea, MA 02150 since at least

January 1, 1995.

46.    Stormwater from Second Street Iron & Metal at the 285 Second Street Facility

has discharged and continues to discharge into storm drains near the Facility including,

but not limited to, the storm drains on Second Street and the conveyances adjacent to the Facility, and into the Everett and Chelsea stormwater systems.  These storm drains and other conveyances discharge into the Island End River and/or into the Mystic River.

47.     Stormwater from Second Street Iron & Metal at the 315 Third Street Facility has discharged and continues to discharge into storm drains near the Facility including, but not limited to, the storm drains on Third Street, Locust Street, East Locust Street, East Elm Street and other conveyances adjacent to the Facility, and into the Everett and Chelsea stormwater systems.  These storm drains and other conveyances discharge into the Island End River and/or into the Mystic River.

48.     The primary activity at the 285 Second Street Facility falls under Standard Industrial Classification ("SIC") Code of 5093, the listed codes in Appendix D of the MSGP, and/or the activities listed in 40 C.F.R. § 122.26(b)(14).

49.     The primary activity at the 315 Third Street Facility falls under Standard Industrial Classification ("SIC") Code of 5093, the listed codes in Appendix D of the MSGP, and/or the activities listed in 40 C.F.R. § 122.26(b)(14).

50.     Second Street Iron & Metal has engaged and continues to engage in the following industrial operations at the 285 Second Street Facility: assembling, breaking up, sorting, and wholesale distribution of ferrous metals, such as iron and steel; and wholesale distribution, sorting, and processing, of nonferrous metals, including but not limited to scrap, textile waste, and other recyclable materials, and shipping and receiving of materials.

51.     Second Street Iron & Metal has engaged and continues to engage in the following industrial operations at the 315 Third Street Facility: assembling, breaking up, sorting,

and wholesale distribution of ferrous metals, such as iron and steel; and wholesale distribution, sorting, and processing, of nonferrous metals, including but not limited to scrap, textile waste, and other recyclable materials, and shipping and receiving of materials.

52.     The sources of pollutants associated with the industrial activities at the 285 Second Street Facility include: scrap metal ferrous and non-ferrous outdoor storage areas, parking areas, shipping and receiving areas, loading and unloading areas, maintenance areas, operations building, scrap metal and used appliance storage areas, piles of ferrous and non-ferrous turning and cutting, and on-site material handling equipment such as forklifts.

53.     The sources of pollutants associated with the industrial activities at the 315 Third Street Facility include: scrap metal ferrous and non-ferrous outdoor storage areas, parking areas, shipping and receiving areas, loading and unloading areas, maintenance areas, operations building, scrap metal and used appliance storage areas, piles of ferrous and non-ferrous turning and cutting, and on-site material handling equipment such as forklifts.

54.     Pollutants present in stormwater discharged from the 285 Second Street Facility therefore include, but are not limited to: toxic metals, such as copper, iron, zinc, lead, cadmium, aluminum; petroleum products including oil, fuel, grease, transmission and brake fluids; nutrients; pathogens; trash; hydraulic fluids; acids and solvents; sediment and total suspended solids; pH-affecting substances; fugitive and other dust, dirt, and debris, and elevated temperature.

55.     Pollutants present in stormwater discharged from the 315 Third Street Facility therefore include, but are not limited to: toxic metals, such as copper, iron, zinc, lead, cadmium, aluminum; petroleum products including oil, fuel, grease, transmission and brake fluids; nutrients; pathogens; trash; hydraulic fluids; acids and solvents; sediment and total suspended solids; pH-affecting substances; fugitive and other dust, dirt, and debris, and elevated temperature.

56.     The scrap metal piles at the 285 Second Street Facility are uncovered, and therefore exposed to precipitation.

57.     The scrap metal piles at the 315 Third Street Facility are uncovered, and therefore exposed to precipitation.

58.     Materials associated with industrial activities are exposed to the elements at the 285 Second Street Facility, including, but not limited to, light iron, heavy steel, copper, industrial aluminum waste, brass, stainless steel, electric motors, lead, batteries, AC compressors, auto radiators, zinc, insulated wire, nickel alloys, junk cars, precious metals, stoves, aluminum ladders, automotive engines, grocery carts, oven ranges, tire rims, refrigerators, and furnaces contaminated with industrial pollutants.  These materials contain or are contaminated with the pollutants listed at paragraph 54 above.

59.     Materials associated with industrial activities are exposed to the elements at the 315 Third Street Facility, including, but not limited to, light iron, heavy steel, copper, industrial aluminum waste, brass, stainless steel, electric motors, lead, batteries, AC compressors, auto radiators, zinc, insulated wire, nickel alloys, junk cars, precious metals, and furnaces that are contaminated with industrial pollutants.  These materials contain or are contaminated with the pollutants listed at paragraph 55 above.

60.     Second Street Iron & Metal has operated and continues to operate trucks and other vehicles that enter and exit the 285 Second Street Facility via driveways or access roads.

61.     Second Street Iron & Metal has operated and continues to operate trucks and other vehicles that enter and exit the 315 Third Street Facility via driveways or access roads.

62.     These vehicles transport pollutants, including hydrocarbons (oil, grease, fuel), metals, total suspended solids, sediment, road salt (which in turn contains chlorides, sodium, and impurities), onto and off of the 285 Second Street Facility into storm drains and other conveyances near the Facility and into the waters of the United States.

63.     These vehicles transport pollutants, including hydrocarbons (oil, grease, fuel), metals, total suspended solids, sediment, road salt (which in turn contains chlorides, sodium, and impurities), onto and off of the 315 Third Street Facility into storm drains and other conveyances near the Facility and into the waters of the United States.

64.     During every measurable precipitation event and every instance of snowmelt, water flows onto and over exposed materials and accumulated pollutants at the 285 Second Street Facility, generating stormwater runoff.

65.     During every measurable precipitation event and every instance of snowmelt, water flows onto and over exposed materials and accumulated pollutants at the 315 Third Street Facility, generating stormwater runoff.

66.     Stormwater runoff from the 285 Second Street Facility is contaminated with pollutants from the activities referenced at paragraphs 44, 46, 48, 50, 52, 54, 56, 58, 60, 62, 64.  Stormwater runoff from the Facility is conveyed to the City of Everett and City

13

of Chelsea stormwater systems and into the Island End and Mystic Rivers.  Stormwater runoff from the Facility is not treated to remove the pollutants referenced at paragraph 54 above, before it is discharged into the Island End and Mystic Rivers.

67.     Stormwater runoff from the 315 Third Street Facility is contaminated with pollutants from the activities referenced at paragraphs 45, 47, 49, 51, 53, 55, 57, 59, 61, 63, 65.  Stormwater runoff from the Facility is conveyed to the City of Everett and City of Chelsea stormwater systems and into the Island End and Mystic Rivers.  Stormwater runoff from the Facility is not treated to remove the pollutants referenced at paragraph 55, above, before it is discharged into the Island End and Mystic Rivers.

68.     EPA considers precipitation above 0.1 inches during a 24 hour period a measurable precipitation event.  40 C.F.R. § 122.26(c)(i)(E)(6).

69.     A measurable precipitation event is sufficient to generate runoff from the 285 Second Street Facility

70.     A measurable precipitation event is sufficient to generate runoff from the 315 Third Street Facility.

71.     The MSGP specifically references snowmelt as a form of stormwater discharge that must be addressed by a discharger in its control measures. MSGP Part 2.1.2.1.

72.     Second Street Iron & Metal has discharged and continues to discharge stormwater containing pollutants from the activities at the Facilities referenced at paragraphs 44-65 above to the City of Everett's storm drain system and City of Chelsea's storm drain system and other conveyances and into the Island End River.

73.     The Island End River flows into the Mystic River, which flows into Boston Harbor, which flows into the Atlantic Ocean, all of which are "waters of the United

States," as defined in 40 C.F.R. § 122.2, and therefore, "navigable waters," as defined in

33 U.S.C. § 1362(7).

74.     Massachusetts' Impaired Waters List identifies the Mystic River and the Island

End River as an impaired water body pursuant to Section 303(d) of the CWA, 33 U.S.C.

§ 1313(d).[2]

75.     Second Street Iron & Metal has not met and continues to fail to meet the

requirements to obtain authorization to discharge stormwater under the MSGP or another

valid NPDES permit for the 285 Second Street Facility.

76.     Second Street Iron & Metal has not met and continues to fail to meet the

requirements to obtain authorization to discharge stormwater under the MSGP or another

valid NPDES permit for the 315 Third Street Facility.

77.     Second Street Iron & Metal has not posted a complete and accurate SWPPP on

the Internet for the 285 Second Street Facility.

78.     Second Street Iron & Metal has not posted a complete and accurate SWPPP on

the Internet for the 315 Third Street Facility.

79.     Second Street Iron & Metal has failed to install and implement control measures

to meet numeric and non-numeric effluent limitations in Part 2.1 of the MSGP at the 285

Second Street Facility.

80.     Second Street Iron & Metal has failed to install and implement control measures

to meet numeric and non-numeric effluent limitations in Part 2.1 of the MSGP at the 315

Third Street Facility.

---

[2] MassDEP, Integrated List of Waters (1995), *available at*
http://www.mass.gov/dep/water/resources/08list2.pdf (last accessed Sept. 30, 2010); EPA, Listed Water
Information, Mystic River (2006), *available at*
http://oaspub.epa.gov/tmdl/enviro.control?p_list_id=MA71-03&p_cycle=2006 (last visited September 30,
2010).

81.     Second Street Iron & Metal has failed to develop and implement a complete and accurate SWPPP that meets the requirements of MSGP Part 5, before submitting an NOI for permit coverage for the 285 Second Street Facility

82.     Second Street Iron & Metal has failed to develop and implement a complete and accurate SWPPP that meets the requirements of MSGP Part 5, before submitting an NOI for permit coverage for the 315 Third Street Facility.

83.     Second Street Iron & Metal has not filed an NOI for the 285 Second Street Facility.

84.     Second Street Iron & Metal has not filed an NOI for the 315 Third Street Facility.

85.     Second Street Iron & Metal does not have an NOI to be covered under the MSGP posted publicly by EPA for the 285 Second Street Facility.[3]

86.     Second Street Iron & Metal does not have an NOI to be covered under the MSGP posted publicly by EPA for the 315 Third Street Facility.

87.     Second Street Iron & Metal is not authorized to discharge from the 285 Second Street Facility under the MSGP until all requirements of MSGP Part 1.3 have been fulfilled and thirty days has passed since the EPA posts the NOI. MSGP Part 1.3, table 1-2.

88.     Second Street Iron & Metal is not authorized to discharge from the 315 Third Street Facility under the MSGP until all requirements of MSGP Part 1.3 have been fulfilled and thirty days has passed since the EPA posts the NOI. MSGP Part 1.3, table 1-2.

_____

[3] MSGP Part 1.3, table 1-2. As of September 30, 2010, Second Street Iron & Metal's NOI is not posted on EPA's website, www.epa.gov/npdes/noisearch.

## CLAIMS FOR RELIEF

### First Cause of Action:  Failure to Obtain and Comply with a Permit for Industrial Discharges

89.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

90.    Second Street Iron & Metal is an industrial discharger with a primary industrial activity at each of its Facilities falling under a SIC Code of 5093 or another activity listed under Appendix D of the MSGP or 40 C.F.R. § 122.26(b)(14).

91.    Second Street Iron & Metal is required to obtain permit coverage for both Facilities and comply with the MSGP pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

92.    Second Street Iron & Metal has failed and continues to fail to obtain permit coverage and comply with the MSGP pursuant to Section 402 of the CWA, 33 U.S.C. § 1342 for both Facilities.

93.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has not obtained permit coverage for the 285 Second Street Facility and complied fully with the MSGP is a separate and distinct violation of Section 402 of the CWA, 33 U.S.C. § 1342.

94.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has not obtained permit coverage for the 315 Third Street Facility and complied fully with the MSGP is a separate and distinct violation of Section 402 of the CWA, 33 U.S.C. § 1342.

**Second Cause of Action:  Unauthorized Discharge of Pollutants Into Waters of the United States**

95.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

96.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any "point source" to waters of the United States, except for discharges in compliance with a NPDES permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

97.     In order to be authorized to discharge lawfully under the MSGP, a facility must meet requirements set forth in Part 1.3.1 of the MSGP.  These include:

      (a)  meeting the eligibility requirements in Part 1.1 of the MSGP;

      (b)  selecting, designing, installing, and implementing control measures in accordance with MSGP Part 2.1;

      (c)  developing a complete and accurate SWPPP according to MSGP Part 5; and

      (d)  filing a complete and accurate NOI to seek coverage under the MSGP.

98.     Second Street Iron & Metal is an industrial discharger with a primary SIC Code of 5093 and/or another activity listed under Appendix D of the MSGP or 40 C.F.R. § 122.26(b)(14),which means it is obligated to apply for coverage under the MSGP or other legal authorization for each Facility.

99.     Second Street Iron & Metal's industrial activities at both Facilities have resulted and continue to result in "stormwater discharge associated with industrial activity" within the meaning of 40 C.F.R. § 122.26(b)(14) into the Everett and Chelsea, MA stormwater systems and into the Island End River and the Mystic River on every day of precipitation greater than 0.1 inches and every instance of snowmelt.

100.    Second Street Iron & Metal's discharges of stormwater associated with industrial activity ("industrial stormwater discharges") at both Facilities are discharges of pollutants within the meaning of 33 U.S.C. § 1362(12).  Second Street Iron & Metal's industrial stormwater discharges at both Facilities are "point source" discharges into waters of the United States.

101.    Second Street Iron & Metal's industrial stormwater discharges at both Facilities have caused and continue to cause discharges of pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

102.    Since at least January 1, 1995, Second Street Iron & Metal has discharged and continues to discharge industrial stormwater at both Facilities without meeting the authorization requirements to be covered under a valid NPDES permit as required by Section 301(a), 33 U.S.C. § 1311(a), and Section 402(p)(2)(B) of the CWA, 33 U.S.C. § 1342(p)(2)(B).

103.    Since at least January 1, 1995, Second Street Iron & Metal has discharged and continues to discharge pollutants to an impaired waterbody, causing or contributing to an exceedance of water quality standards.

104.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has discharged and continues to discharge industrial stormwater from the 285 Second Street Facility without authorization under a valid NPDES permit constitutes a distinct violation of Section 301(a), 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

105.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has discharged and continues to discharge industrial stormwater from the 315

Third Street Facility without authorization under a valid NPDES permit constitutes a distinct violation of Section 301(a), 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

**Third Cause of Action: Failure to Submit to EPA a Complete Notice of Intent to be Covered under the MSGP in Violation of the MSGP and the Clean Water Act. (Violations of MSGP Part 1.3.1)**

106.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

107.     Industrial dischargers are required to submit to EPA a complete and accurate NOI to be covered under the MSGP pursuant to MSGP Part 1.3.1.

108.     Second Street Iron & Metal has failed and continues to fail to submit to EPA a complete and accurate NOI to be covered under the MSGP pursuant to MSGP Part 1.3.1 for either of the Facilities.

109.     Second Street Iron & Metal has failed and continues to fail to develop and implement a complete and accurate SWPPP meeting the requirements of MSGP Part 5 before submitting an NOI for coverage for either of the Facilities.

110.     Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has not filed a complete and accurate NOI for the 285 Second Street Facility is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

111.     Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has not filed a complete and accurate NOI for the 315 Third Street Facility, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Fourth Cause of Action: Failure to Comply with MSGP Requirements for New Dischargers to an "Impaired Water" (Violations of MSGP Part 1.1.4.7)**

112.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

113.    Second Street Iron & Metal is a new discharger under the MSGP as it has not previously sought coverage for either Facility under the previous MSGP permits EPA has issued.

114.    The Mystic River is identified as impaired due to various pollutants, including metals, oil and grease, organic enrichment/oxygen depletion, inorganics, pathogens, toxic organics, taste, color, odor, and ammonia.

115.    Second Street Iron & Metal has discharged and continues to discharge stormwater contaminated with some of these pollutants, such as metals, oil, grease, solvents, nutrients, pathogens, dissolved solids, trash, and other pollutants associated with Second Street Iron & Metal's operations at its 285 Second Street Facility through stormwater contact with the Facilities' industrial discharges.

116.    Second Street Iron & Metal has discharged and continues to discharge stormwater contaminated with some of these pollutants, such as metals, oil, grease, solvents, nutrients, pathogens, dissolved solids, trash, and other pollutants associated with Second Street Iron & Metal's operations at its 315 Third Street Facility through stormwater contact with the Facilities' industrial discharges.

117.    New dischargers to impaired waters are required to take one of the following actions prior to obtaining permit coverage:

> (a) prevent all exposure of pollutants for which a water body is impaired pursuant to MSGP Part 1.1.4.7(a); or

(b) document that the pollutants for which a water body is impaired are not present at the facility and retain documentation for this finding with a SWPPP pursuant to MSGP Part 1.1.4.7(b); or

(c) provide EPA Region 1 with data to support a showing that the discharge is not expected to cause or contribute to an exceedance of a water quality standard by showing that the discharge of the pollutant for which the water body is impaired will meet instream water quality criteria at the point of discharge to the waterbody and retain such data in a SWPPP pursuant to MSGP Part 1.1.4.7(b)(i).

118.    Second Street Iron & Metal has failed to and continues to fail to prevent all exposure of pollutants at each Facility for which the Mystic River is impaired pursuant to MSGP Part 1.1.4.7(a).

119.    Second Street Iron & Metal has failed and continues to fail to document that the pollutants for which the Mystic River is impaired are not present at either Second Street Iron & Metal Facility, nor has Second Street Iron & Metal retained documentation for this finding with a SWPPP for each Facility, pursuant to MSGP Part 1.1.4.7(c).

120.    Second Street Iron & Metal has not provided and continues to fail to provide EPA Region 1 with data supporting a showing that the discharge from either Facility is not expected to cause or contribute to an exceedance of a water quality standard by showing that the discharge of the pollutant for which the Mystic River is impaired will meet instream water quality criteria at the point of discharge to the Mystic River nor has Second Street Iron & Metal retained such data in a SWPPP at either Facility, pursuant to MSGP Part 1.1.4.7(c)(i).

121.     Therefore, Second Street Iron & Metal has not met and continues to fail to meet the permit requirements applicable to new dischargers for both Facilities.

122.     Each and every day since at least January 1, 1995 on which the Second Street Iron & Metal has failed and continues to fail to comply with the MSGP requirements for new dischargers into impaired waters at the 285 Second Street Facility, constitutes a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

123.     Each and every day since at least January 1, 1995 on which the Second Street Iron & Metal has failed and continues to fail to comply with the MSGP requirements for new dischargers into impaired waters at the 315 Third Street Facility, constitutes a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

**Fifth Cause of Action:  Failure to Develop and Implement a SWPPP in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 5)**

124.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

125.     Industrial dischargers are required to develop and implement a complete and accurate SWPPP and to retain a copy of the SWPPP at the facility at all times together with all other required inspection, monitoring, and certification records that demonstrate full compliance with the Permit, pursuant to MSGP Part 5.

126.      Second Street Iron & Metal has failed and continues to fail to develop and implement a complete and accurate SWPPP prior to submitting an NOI for coverage for either Facility.

127.    Second Street Iron & Metal's ongoing failure to develop and implement a complete and accurate SWPPP for each Facility is evidenced by, *inter alia*, the outdoor uncovered storage of industrial materials, including waste materials, without appropriate Best Management Practices ("BMPs"); the continued exposure of significant quantities of industrial material to stormwater flows; the failure to either treat stormwater prior to discharge or to implement effective containment practices; and the continued discharge of stormwater pollutants.

128.    Second Street Iron & Metal has failed and continues to fail to retain a copy of a complete and accurate SWPPP and all other required documentation at either Facility at all times, pursuant to MSGP Part 5.4.

129.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has failed and continues to fail to develop and fully implement a complete and accurate SWPPP for the 285 Second Street Facility and to keep such SWPPP on file at the Facility together with all other required documentation, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

130.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has failed and continues to fail to develop and fully implement a complete and accurate SWPPP for the 315 Third Street Facility and to keep such SWPPP on file at the Facility together with all other required documentation, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Sixth Cause of Action:  Failure to Take Control Measures and Meet Water Quality-Based Effluent Limitations in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 2)**

131.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

132.    Industrial dischargers are required to take control measures and meet water quality-based effluent limitations pursuant to MSGP Part 2.

133.    Industrial dischargers must "minimize" exposure of manufacturing, processing, and material storage areas to precipitation, snowmelt, and runoff meaning "reduce and/or eliminate" such exposures "to the extent achievable using control measures, including best management practices, that are technologically available and economically practicable and achievable in light of best industry practice," pursuant to MSGP Part 2.1.

134.    The control measures must meet the standards set by Best Practicable Control Technology/Best Available Technology Economically Achievable/Best Conventional Pollutant Control Technology ("BPT/BAT/BCT") standards and must comply with all non-numeric effluent limits set forth at Part 2.1.2 of the MSGP, including requirements for good housekeeping, maintenance, spill prevention and response, erosion and sediment control, salt storage, employee training, prevention of discharge of waste, garbage, and floatable debris to receiving waters, eliminating non-stormwater discharges, and dust generation and vehicle tracking of industrial materials. MSGP Part 2.1.1.

135.    The control measures must "divert, infiltrate, reuse, contain, or otherwise reduce stormwater runoff, to minimize pollutants in your facility's discharges." MSGP Part 2.1.2.6.

136.    Industrial dischargers must select, design, install, and implement the control measures referenced in paragraphs 132-135 above in accordance with good engineering practices and manufacturer's specifications.  MSGP Part 2.1. The control measures must be modified if the facility finds that it is not achieving the effect of minimizing pollutant discharges. MSGP Part 2.1.

137.    Second Street Iron & Metal has operated and continues to operate both Facilities in a manner that exposes industrial materials to pollutants without implementing BMPs that achieve the BPT/BAT/BCT standard and comply with all non-numeric effluent limitations.

138.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has operated and continues to operate the Facility without implementing BMPs at the 285 Second Street Facility that achieve the BPT/BAT/BCT standard, and comply with all non-numeric effluent limitations pursuant to MSGP Part 2.1, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

139.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has operated and continues to operate the Facility without implementing BMPs at the 315 Third Street Facility that achieve the BPT/BAT/BCT standard, and comply with all non-numeric effluent limitations pursuant to MSGP Part 2.1, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

140.    Discharges from the Facilities must be controlled as necessary to meet applicable water quality standards. MSGP Part 2.2.1.

141.   Since at least January 1, 1995, the Second Street Iron & Metal Facilities have discharged pollutants listed at paragraph 54 and 55, above, into the Mystic River and the Island End River. MassDEP has listed these rivers as impaired for metals, oil and grease, organic enrichment/oxygen depletion, inorganics, pathogens, toxic organics, taste, color, odor, and ammonia.

142.   Second Street Iron & Metal's discharges from both Facilities are not controlled as necessary to meet applicable water quality standards.

143.   Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has failed to implement control measures and meet water-quality based effluent limitations at the 285 Second Street Facility in violation of the MSGP is a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

144.   Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has failed to implement control measures and meet water-quality based effluent limitations at the 315 Third Street Facility in violation of the MSGP is a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

**Seventh Cause of Action:  Failure to Conduct Facility Inspections in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 4)**

145.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

146.   Industrial dischargers are required to conduct and document routine facility inspections pursuant to MSGP Part 4.1, in no cases less frequently than once per quarter.

147.   Second Street Iron & Metal has failed and continues to fail to conduct comprehensive routine facility inspections at either Facility, pursuant to MSGP Part 4.1.

148.   Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has operated and continues to operate without conducting routine facility inspections at the 285 Second Street Facility, pursuant to MSGP Part 4.1, is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

149.   Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has operated and continues to operate without conducting routine facility inspections at the 315 Third Street Facility, pursuant to MSGP Part 4.1, is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

150.   Industrial dischargers are required to collect a wet-weather stormwater sample from each outfall at the facility once each quarter throughout the permit term, to assess such sample for the presence of indicators of stormwater pollution, and to retain documentation of such visual assessments, pursuant to MSGP Part 4.2.

151.   Second Street Iron & Metal has failed and continues to fail to collect a wet-weather stormwater sample from each outfall at either Facility, to inspect the sample for indicators of pollution at either Facility, and to document such assessment for either Facility, pursuant to MSGP Part 4.2.

152.   Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has operated and continues to operate the 285 Second Street Facility without conducting required wet-weather sampling and visual assessment and retaining

documentation pursuant to MSGP Part 4.2 is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

153.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has operated and continues to operate the 315 Third Street Facility without conducting required wet-weather sampling and visual assessment and retaining documentation pursuant to MSGP Part 4.2 is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

154.    Industrial dischargers are required to conduct annual comprehensive site inspections, to document such annual inspections, and to submit the results of such inspections to EPA, pursuant to MSGP Part 4.3.

155.    Second Street Iron & Metal has failed and continues to fail to conduct and document such comprehensive site inspections for either Facility and to submit the results of such inspections to EPA for either Facility, pursuant to MSGP Part 4.3.

156.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has operated and continues to operate the 285 Second Street Facility without conducting and documenting the required comprehensive site inspection and submitting such documentation to EPA pursuant to MSGP Part 4.3 is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

157.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has operated and continues to operate the 315 Third Street Facility without conducting and documenting the required comprehensive site inspection and submitting such documentation to EPA pursuant to MSGP Part 4.3 is a separate and distinct

violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Eighth Cause of Action:  Failure to Comply with the Required Monitoring and Sampling Procedures in Violation of the MSGP and the Clean Water Act. (Violations of MSGP Part 6)**

158.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

159.    Industrial dischargers are required to comply with the required monitoring and sampling procedures pursuant to MSGP Part 6.

160.    Second Street Iron & Metal has failed and continues to fail to comply with the required benchmark monitoring and sampling procedures for either Facility, pursuant to MSGP Part 6.2.1.  As a result, Second Street Iron & Metal has also failed to take any required review of control measures, additional monitoring, and corrective actions that would have been triggered by benchmark monitoring at either Facility.

161.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has operated and continues to operate the 285 Second Street Facility without complying with the required benchmark monitoring and sampling procedures pursuant to MSGP Part 6 is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

162.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has operated and continues to operate the 315 Third Street Facility without complying with the required benchmark monitoring and sampling procedures pursuant to MSGP Part 6 is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

163.    Second Street Iron & Metal has failed and continues to fail to comply with the required impaired waters monitoring pursuant to MSGP Part 6.2.4 for both Facilities.

164.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has failed and continues to fail to comply with the required impaired waters monitoring for the 285 Second Street Facility, pursuant to MSGP Part 6.2.4, is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311, and Section 402 of the CWA, 33 U.S.C. § 1342.

165.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has failed and continues to fail to comply with the required impaired waters monitoring for the 315 Third Street Facility, pursuant to MSGP Part 6.2.4, is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311, and Section 402 of the CWA, 33 U.S.C. § 1342.

**Ninth Cause of Action:  Failure to Carry Out the Required Reporting and Recordkeeping in Violation of the MSGP and the Clean Water Act. (Violations of MSGP Part 7**)

166.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

167.    Industrial dischargers are required to carry out the required reporting and recordkeeping pursuant to MSGP Part 7.

168.    Reporting and recordkeeping requirements under the MSGP Part 7 include:

(a) Reporting monitoring data to EPA pursuant to MSGP Part 7.1;

(b) Preparing and submitting an annual report containing specified information to EPA, pursuant to MSGP Part 7.2;

(c)  Submitting an exceedance report to EPA if follow-up monitoring after a

benchmark exceedance exceeds a numeric effluent limit, pursuant to MSGP

Part 7.3;

(d)  Completing additional reporting and submitting such reports to the

appropriate EPA office, including: reporting of any noncompliance within the

specified time period; notifying EPA as soon as the facility has knowledge of

a leak, spill, or other release containing oil or a hazardous substance in a

reportable quantity; notifying EPA of certain planned changes to the facility;

submitting a complete and accurate NOI in the event of transfer of ownership

and operation; and correcting or supplementing facts in the facility's NOI or

any other report, pursuant to MSGP Part 7.4; and

(e)  Retaining copies of the SWPPP including any modifications, along with

additional documentation required under Part 5.4, all reports and certifications

required by the permit, monitoring data, and records of data used to complete

the NOI, for a period of at least 3 years from the date on which permit

coverage expires or is terminated. MSGP Part 7.5.

169.  Second Street Iron & Metal has failed and continues to fail to carry out the

required reporting and recordkeeping pursuant to MSGP Part 7 for both Facilities

170.  Each and every day since at least January 1, 1995 on which Second Street Iron &

Metal has operated and continues to operate the 285 Second Street Facility without

carrying out the required reporting and recordkeeping for each Facility pursuant to MSGP

Part 7, is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. §

1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

171.     Each and every day since at least January 1, 1995 on which Second Street Iron &

Metal has operated and continues to operate the 315 Third Street Facility without

carrying out the required reporting and recordkeeping for each Facility pursuant to MSGP

Part 7, is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. §

1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Tenth Cause of Action:  Failure to Comply with the Requirements of MSGP
Subpart N-Scrap Recycling and Waste Recycling Facilities in Violation of the
MSGP and the Clean Water Act.  (Violations of MSGP Part 8 Subpart N)**

172.     Plaintiff incorporates the allegations contained in the above paragraphs as though

fully set forth herein.

173.     Scrap recycling and waste recycling facilities are required to comply with the

requirements of MSGP Part 8 Subpart N-Scrap Recycling and Waste Recycling Facilities

("MSGP Part 8 Subpart-N").  Such requirements include:

(a)  implementing additional technology-based effluent limitations (MSGP Part

8.N.3);

(b)  meeting additional SWPPP and inspection requirements (MSGP Part 8.N.4

and Part 8.N.5);

(c)  monitoring stormwater discharges for compliance with the benchmark

pollutant limitations applicable specifically to metal recycling facilities

(MSGP Part 8.N.6); and

(d)  minimizing contact of stormwater runoff with stockpiled materials, processed

materials and non-recyclable wastes through various control measures such as

permanent or semi-permanent covers, oil and water separators, sumps and dry

absorbents for areas where potential sources of residual fluids are stockpiled

(MSGP Part 8.N.3.1.2).

174.    Second Street Iron & Metal has not implemented and continues to fail to

implement additional technology-based effluent limitations pursuant to MSGP Part 8

Subpart-N, pursuant to MSGP Part 8.N.3, at either Facility.

175.    Second Street Iron & Metal has not met and continues to fail to meet additional

SWPPP requirements pursuant to MSGP Part 8 Subpart-N, pursuant to MSGP Part 8.N.4,

at both Facilities

176.    Second Street Iron & Metal has not met the additional inspection requirements of

the MSGP Part 8 Subpart-N, pursuant to MSGP Part 8.N.5, for either Facility.

177.    Second Street Iron & Metal has failed and continues to fail to monitor both

Facilities' stormwater discharges for compliance with the benchmark pollutant

limitations applicable specifically to metal recycling facilities of the MSGP Part 8

Subpart-N, pursuant to MSGP Part 8.N.6.

178.    Second Street Iron & Metal has failed and continues to fail to minimize either

Facilities' contact of stormwater runoff with stockpiled materials, processed materials,

and non-recyclable wastes through various control measures such as permanent or semi-

permanent covers, oil and water separators, sumps and dry absorbents for areas where

potential sources of residual fluids are stockpiled pursuant to MSGP Subpart-N, pursuant

to MSGP Part 8.N.3.1.2.

179.    Each and every day since at least January 1, 1995 on which Second Street Iron &

Metal has operated and continues to operate the 285 Second Street Facility without

carrying out required sector-specific activities pursuant to MSGP Part 8 is a separate and

distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

180.    Each and every day since at least January 1, 1995 on which Second Street Iron & Metal has operated and continues to operate the 315 Third Street Facility without carrying out required sector-specific activities pursuant to MSGP Part 8 is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

181.    Second Street Iron & Metal's violations of the CWA at both Facilities are on-going and continuous, are capable of repetition, and result from the same underlying and inadequately resolved causes.

**RELIEF REQUESTED**

182.    Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a)     Declare Defendant to have violated and to be in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for its unlawful and unauthorized discharges of pollutants at both Facilities;

(b)     Declare Defendant to have violated and to be in violation of Section 402 of the CWA, 33 U.S.C. § 1342, for its failure to seek coverage under the Multi-Sector General Permit and failure to comply with all applicable requirements of the MSGP for both Facilities;

(c)     Enjoin Defendant from discharging pollutants from both Second Street Iron & Metal Facilities and into the surface waters surrounding and

downstream from Second Street Iron & Metal except as authorized by and in compliance with a National Pollutant Discharge Elimination Permit;

(d)     Order Defendant to comply fully and immediately with all applicable requirements of the Multi-Sector General Permit for both Facilities;

(e)     Order Defendant to pay civil penalties of $27,500 per day per violation for all violations occurring before or on March 15, 2004, and $32,500 per day per violation for all violations occurring after March 15, 2004, and $37,500 per day per violation for all violations occurring after January 12, 2009, for each violation of the CWA at each Facility pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 – 19.4;

(f)     Order Defendant to take appropriate actions to restore the quality of the waters impaired by its discharges from both Facilities and to remedy harm to the surrounding ecosystems and communities affected by their noncompliance with the CWA;

(g)     Award Plaintiff's costs (including reasonable investigative, attorney, witness, and consultant fees) as permitted by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

(h)     Award any such other and further relief as this Court may deem appropriate.

Dated:  September 29, 2010

Respectfully submitted,

/s/Cynthia E. Liebman (BBO #665528)
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
Phone: 617-350-0990 x 744
Fax: 617-350-4030


Sheryl Dickey
Vermont Law School
Environmental and Natural Resources
Law Clinic
164 Chelsea Street
P.O. Box 96
South Royalton, VT 05068
Phone: 802-831-1626
Fax: 802-831-1631

Attorneys for Plaintiff
CONSERVATION LAW FOUNDATION